Thompson, J.
Two questions arising out of this case are presented for consideration:
1. Whrther an action can be maintained to recover back the CQ.j'/i deration money, paid under the circumstances ■stated In the case ? and if so, then,
2. "Whether the defendant, who acted only as agent or factor, can be made responsible ?
From the fact stated with respect to the first point, it ap pears that there was no express warranty by the defendant, or any fraud in the sale. The w'ood was sold and purchased as Irazilletto wood, and a fair price paid for such wood, when in fact the wood was of a different quality, and of little or no value. The plaintiff’s agent, who made the purchase, saw the wood when unloaded and delivered, and did not discover or know that it was of a different *52 quality from that described in the bills of parcels; neither did the defendant, who was only consignee of this cargo., know that the wood was not brazilletto. The question then arises, whether there was an implied warranty, so as to afford redress to the plaintiffs, or whether the maxim of ca> veat emptor must be applied to them. From an examination of the decisions in courts of common law, I can find no case where an action has been sustained under similar circumstances: an express warranty, or some fraud in the sale, are deemed indispensably necessary to be shown. In the case of Chandelor v. Lopus, (2 Cr. Rep. 4,) in the exchequer-chamber, it was decided, that an action of trespass on the case would not lie for selling a jewel, affirming it to be a bezoar stone, *when in truth it was not, unless it be alleged that the defendant knew it was not a. bezoar, or he warranted it to be such. And in the case of Springwell v. Allen, (2 East, 448, in note,) it was adjudged that the scienter or fraud was the gist of the action, when there was no warranty. Mr. Wooddeson, in his Lectures, (2 Woodd. Lee. 415,) says, in the English law, relating to this subject, a very unconscientious maxim seems long to have prevailed, which was expressed or alluded to by the words caveat emptor, signifying that it was the business of the buyer to be upon his guard, and that he must abide the loss of an imprudent purchase, unless the goodness and soundness of the thing sold be warranted by the seller. But this doctrine, he says, is now exploded, and a more reasonable principle has succeeded, that a fair price implies a warranty, and that a man is not supposed, in the contract of sale, to part with his money without expecting an adequate compensation.
Here we find a full and complete recognition by this commentator, that the law once was as laid down in the above cases; and the modern and improved doctrine, as he calls it, however reasonable and just it may at first seem, does not appear to be fortified and sanctioned by adjudged cases. They all determine, either that there must be an *53 express warranty, or some fraud on the part of the vendor. In the ease of Bree v. Holbech, (Doug. 655,) assumpsit wag brought to recover back money paid as the consideration for the assignment of a mortgage which turned out to be a forgery. The defendant being an administrator with the will annexed, and finding the mortgage among the papers of the testator, assigned it bona fide, not knowing it to bo a forgery; and it was adjudged that he was not liable to refund, he having acted in good faith; and there being no covenant for the goodness of the title, that it was incumbent on the plaintiff to have looked to the goodness of it. And .in the case of Stewart v. Wilkins, (Doug. 18,) it was ruled that assumpsit was the proper form of action where there is an express warranty; and Lord Mansfield there said, that selling for a sound price, without warranty; may be a ground for an assumpsit; but in such case it ought to be laid that the defendant knew of the unsoundness. 2 Bast, 446. Again, in the case of Williamson v. Allison, the same subject in some measure came under review ; *and the law, as laid down in the cases of Springwell v. Allen, and Chandelor v. Lopus, above cited, was fully recognized. Eonblanque, in his valuable Treatise of Equity, (1 Fonb. 360, note h,) speaking of the justice and propriety of this principle, says, “ To excite that diligence which is necessary to guard against imposition, and to secure that good faith which is necessary to justify a certain degree of confidence, is essential to the intercourse of society. These objects are attained by those rules of law which require the purchaser to apply his attention to those particulars, which may be supposed to be within the reach of his observation and judgment; and the vendor to communicate those particulars and defects, which cannot be supposed to be immediately within the reach of such attention If the purchaser be wanting of attention to those points, where attention would have been sufficient to protect him from surprise or imposition, the maxim ca* ■ veat ermptor ought to apply. But even against this maxim *54 he may provide, by requiring the vendor expressly to war rant that which the law would not imply to be warranted. If the vendor be wanting in good faith, fides servanda is the rule of law, and may be enforced, both in equity and at law.” These observations, I think, apply with peculiar force in the case before us. The agent of the plaintiffs, who made the purchase, was present at the delivery of the wood ; and the defect now complained of was within the reach of his observation and judgment, had he bestowed proper attention.- I am satisfied that according to the settled decisions in the English courts, either an express warranty, or some fraud or deceit on the part of the vendor, is necessary to be shown, in order to entitle the purchaser to the remedy sought after in the present case. I see no injustice or inconvenience resulting from this doctrine, but, on the contrary, think it best calculated to excite that caution and attention which all prudent men ought to observe in making their contracts. I am therefore of opinion with the defendant, on the first point, which renders it unnecessary for me to examine the other question raised on the argument.
Keht, J.
This is a clear case for the defendant. If upon a sale there be neither a warranty nor deceit, the purchaser purchases at his peril. This seems to have been the ancient, and the uniform language of the English law, and *the only writer of authority, that calls this doctrine in question, is professor Wooddeson, in his Vinerian Lectures, and he does not cite any judicial decision as the basis of his opinion. In the case of Chandelor v. Lopus, (Cro. Jac. 4,) it wras determined in the exchequer, by all the judges except one, that for selling a jeAvel, which was -affirmed to be a bezoar stone, when it was not, no action lay, unless the defendant knew it was not a bezoar stone, or had warranted it to be one. This appears to me a case in point and decisive. And in the case of Parkinson v. Lee, (2 East, 314,) it was decided, that *55 a fair merchantable price ¿lid not raise an implied warranty; that if there be no warranty, and the seller sell the thing, such as he believes it to be, without fraud, he will not be liable for a latent defect. These decisions are two centu ries apart, and the intermediate cases are to the same effect. Co. Litt. 102, a; Cro. Jac. 197; 1 Sid. 146; Yelv. 21; 2 Ld. Raym. 1121; per Holt, Ch. J.; Doug. 20. Aleyn, 91, cited 2 East, 498, natis. By the civil law, says Lord Coke, every man is bound to warrant the thing that he selleth,-albeit there be no express warranty ; but the common law bindeth him not, unless there be a warranty in deed, or law. So Fitzherbert, (N. B. 94, C.) says, that if a man sell wine that is corrupted, or a horse that is diseased, and there be no warranty, it is at the buyer’s peril, and his eyes and his taste ought to be his judges in that case. In the case cited from 2 East, the judges were unanimous, that the rule applied to sales of all kinds of commodities. That without a warranty by the seller, or fraud on his part, the buyer must stand to all losses arising from latent defects, and that there is no instance in the English law of a con* trary rule being laid down. The civil law, and the law of those countries which have adopted the civil as their common law, is more rigorous towards the seller, and make him responsible in every case for a latent defect, (see the Dig. lib. 1, tit. 2, c. 13, n. 1, which gives the very case of selling vitiated wood,) and, if the question was res integra in our law, I confess I should be overcome by the reasoning of the Civilians. And yet, the rule of the common law has been well and elegantly vindicated by Eonblanque, as most happily reconciling the claims of convenience with the duties of good *iaith. It requires the purchaser to apply his attention to those particulars which may be supposed within the reach of his observation and judgment, and the vendor to communicate those particulars and defects which cannot be supposed te be immediately within the reach of such attention. And even against his want of vigilance, the purchaser may pro *56 vide, by requiring the vendor expressly to warrant the article. [1] The mentioning the wood as brazilletto wood, ii, the bill of parcels, and in the advertisement some days previous to the sale, did not amount to a warranty to the plaintiffs. To make an affirmation at the time of the sale, a warranty, it must appear by evidence to be so intended; (Buller, J., 3 D. & E. 57; Carth. 90; Salk. 210;) and not to have been a mere matter of judgment and opinion, and of which the defendant had no particular knowledge. [2] *56a Here it is admitted the defendant was equally ignorant with the plaintiffs, and could have had no such intention.
The cases in which the ship, in a policy of insurance, has been described as neutral or American, and that description held to be a warranty, are not at all analogous to the present case. The policy is a special contract, in which the whole agreement is precisely stated, and no question was ever made in those cases, but that the assured knew, and intended to be understood to mean, that the vessel was of the character described. I am therefore for the defendant.
Lewis, Oh. J. contra.
Judgment for the defendant.

 la executed contracts for the sale of personal property, where there is no fraud or express warranty, the purchaser takes the property at his own risk as to quality and condition. Moses v. Mead, 1 Denio, 378. See in this respect also 5 Denio, 617; Salisbury v. Stainer, 19 Wend. 159; Johnson v. Titus, 2 Hill, 606; Defreeze v. Trumper, 1 J. R. 274; Davis v. Meeker, 5 J. R. 355; Holden v. Daken, 4 J. R. 421; Thompson v. Ashton, 14 J. R. 316; Wright v. Hart, 18 Wend. 449; Same Case, 17 Wend. 267 ; Cunningham v. Spier, 13 J. R. 392; Sands v. Taylor, 5 J. R. 395; Sweet v. Colgate, 20 J. R. 196; Snell v. Morris, 1 J. R. 96; Parry v. Aaron, Ib. 129; Flemming v. Slocum, 18 J. R. 403; Case v. Boughton, 11 Wend. 106. But where the contract is executory, it carries an obligation that it shall be at least merchantable : if it Come short of this, it may be returned after the vendee has had a reasonable time to inspect it; and in an action for the recovery of the stipulated price, the vendor will be reduced to a quantum meruit. Howard v. Hoey, 23 Wend. 350.
It is an exception to the general rule, which implies a warranty on a sale by sample, that the bulk of the article shall correspond with the sample. Moses v. Mead, 1 Denio, 378. See also on this point, Boorman v. Jenkins, 12 Wend. 566; Bebee v. Roberts, Id. 413; Oneida Man. So. v. Lawrence, 4 Cow. 440; Gallagher v. Waring, 9 Wend. 20; Andrews v. Kneeland, 6 Cow. 354; Waring v. Mason, 18 Wend. 425.
And in a sale of provisions for domestic use, the vendor is bound to know that they are sound and wholesome at his peril; a warranty is implied. Moses v. Mead, 1 Denio, 378; Van Bracklin v. Fonda, 12 J. R. 468. A warranty of title is also implied on the sale of a chattel. Defreeze v. Trumper, 1 J. R. 274; and see on this point, Rew v. Barber, 3 Cow. 272; Herman v. Vernoy, 6 J. R. 6; Sweet v. Colgate, 20 J. R. 203; Vibbard v. Johnson, 19 J. R. 77; McCoy v. Archer, 3 Barb. 323; Livingston v. Bain, 10 Wend. 384.

 There are no particular words prescribed by law to make out a warranty; but it is essential that the affirmation made at the time of the sale be intended by the parties as a warranty, and not as the mere expression of an opinion by the vendor. Sweet v. Colgate, 20 J. R. 203; Oneida Man. So, *56a v. Lawrence, 4 Cow. 440; Roberts v. Morgan, 2 Cow. 438; Whitney v. Sutton, 11 Wend. 441; Duffee v. Mason, 8 Cow. 25; Cramer v. Bradshaw, 10 J. R. 484; Molden v. Dakin, 4 J. R. 421; Cook v. Moseley, 13 Wend. 271; Chapman v. Murch, 19 J. R. 290.