Per Curiam. From the bill, answers and testimony in this case, it appeared that the defendant Shelton, was in partnership with the other defendant, Dixon, Being in Dinwiddie county, in the State of Virginia, with a drove of hogs belonging to the firm, on the 16th of February, 1813, he sold the balance of his hogs to one Whitehead, and received in part payment a negro fellow about thirty or forty years of age, at the price of $295. Shelton immediately after this purchase of the negro set out upon his return to this State; and after one day's travel, sold the said negro to the complainant, Westmoreland, in the county of Brunswick, for $295, $85 of which was in money, the balance in obligations on Watson, Irvine Hall, of Nashville. Shelton assigned the bill of sale from White head to the complainant, by indorsement on the same in the name of the firm. It appeared that Shelton had not the negro more than twenty-four hours in his possession, that being the space of time between the purchase from. Whitehead and the sale to Westmoreland. About five days after the complainant's purchase the *Page 224 
negro had a fit. On the 20th of March following he had another, being the first day of his journey from the complainant's residence in Brunswick county, Virginia, to the county of Davidson in this State, whither the complainant sent him, being about to remove himself in the fall. The said negro lived with a certain Abernathy in the county of Davidson, until the fall of the same year, 1813, during which time he had fits, frequently of a dangerous kind, subjecting him to fall into the fire and be burned. That during the same time, in working with the negroes of the said Abernathy, he did not keep his corn row but would work out of it, in half a dozen hills, into another row. That in the fall when the complainant moved to Davidson he was worth nothing. It did not appear by any express proof that Shelton knew anything of the unsoundness of the negro, or of his having fits at the time of his sale of him to the complainant. The complainant, in February, 1814, went to the defendant Shelton's house for the purpose of getting him to take the negro back. The negro was not present, having been too badly burned to be taken along. It was in proof by the testimony of one witness that Shelton upon this occasion admitted that he did sell the negro to the complainant as a sound, healthy, cornfield negro. This, however, is expressly denied by Shelton in his answer responsive to the bill. That on the 3d of April following, in 1814, the said negro was offered to be returned to Shelton at his father's distillery, who refused to receive him. The negro was left there against the will of Shelton, who ordered him to go away, which he did. Shelton received the price of the negro, and this bill is brought to have the price refunded to the complainant. It was argued by the complainant's counsel.
The dictum in Peake, 244, that any representation made by the defendant of the state of the thing sold, at the time of the sale, will amount in law to a warranty, *Page 225 
is too broad, and not supported by the oases adduced in confirmation of it. These cases when looked into, show only that the representation makes the party liable when he knows he is representing a falsehood. But that on the representation, if according to his belief, no action lies. 2 Com. on Contracts, 263 to 282, 265, 266; 1 Term Rep. 175, 244. It is urged that, when the thing sold is unsound, a sound price implied a warranty, and that, whether the seller knew of the unsoundness or not, and without the consideration of fraud in Shelton, he, the plaintiff, was entitled to recover the purchase money or compensation. That the seller was liable for latent defects which common care would not discover, and that in such oases the law presumed a warranty. Buller, 31; Salk. 289; Peake, 244; 1 Bl. 17.
It is conceived the cases in Buller and Salkeld do not support the position contended for. That was an action on the case for a deceit in selling one kind of silk for another. And although it appeared there was no actual deceit in the defendant, the seller, who was a merchant, yet he was held liable by Lord Holt, at Nisi Prius, upon the ground that the deceit being practiced by the defendant's factor, whom he had employed and trusted, it was more reasonable that he who trusted should be the loser than a stranger. This case turns expressly upon the relation between merchant and factor, and steers clear of those cases where such a relation does not exist as the present, For between Whitehead and Shelton there was no trust or confidence in the former. In that case the defendant was not held liable, because his vendor knew and committed the fraud, but because the fraud was committed by a person Whom he had introduced into his business; and thereby held out to the world that he was entitled to be trusted in the course of business. Were it otherwise, by collusion between merchant and factor, the former might impose upon vendees; and *Page 226 
fraudulently make gain without risking his reputation, by placing the fraud at the door of the factor. But though the policy of the law has gone so far in the case of merchant and factor, it has not extended the same result to the common case of vendor and vendee. In these it requires the vendee to protect himself by stipulation against defects which may exist, and do not appear. And if he fails to do so he must abide by the consequence, unless he prove on his vendor a knowledge of the defect which amounts to a fraud. 1 Salk. 289. Horn v. Nichols. The true doctrine of this kind is laid down by Mr. Justice Buller in the same page as the preceding case of Horn and Nichols, and immediately preceding it. It is the case of Chandler v. Lopus, from Cro. J. 41. The defendant, having skill in jewels, had a stone which he affirmed to be a bezoar stone, and sold it as such to the plaintiff. Judgment was arrested because the declaration did not aver that the defendant knew it not to be a bezoar stone, or that he warranted it to be one. This authority goes the whole length of the present case, even supposing the testimony of one witness to counteract the positive denial of the answer in this part particularly responsive to it. that the defendant Shelton affirmed the negro to be a sound, healthy cornfield negro, it is only an affirmance or representation. This is no Warranty; and there is no proof in this ease of its incorrectness, that the negro was otherwise at the time of the sale to the complainant than a sound, healthy cornfield negro. The case of M'Farlane v. Moor, 1 Tenn. 175, cited for the plaintiff, turns upon the point that the seller knew of the defect previous to the sale, and, not disclosing it to the buyer, he ought to be responsible. This is certainly correct; and, if it was proved in the present case that the negro Peter was unsound at the time of the sale, and that this was known to Shelton, Westmoreland would be entitled to recover; but such a case does not at present appear. *Page 227 
The remaining authority cited for the plaintiff is from 1 H. Blackstone, 17, and is a case of express warranty, and does not apply. Ie seems, therefore, to the Court, that the law is as contended for by the defendant's counsel; to wit, that when there is no express warranty, and the seller sells a thing as sound which is unsound, having a latent defect unknown to him, that he is not answerable to the buyer, and that under such circumstances there can be no implied undertaking in law to make good the defect. In the case before the Court there is no express undertaking by Shelton that the negro was sound, and no fraud appears. The circumstances of his purchase and sale seem to be fair, and preclude the idea of deceit and circumvention. He took the negro in payment of his last lot of hogs, and immediately set out on his journey home; showing that the sale of his hogs and his departure for home, and not the acquisition of the negro, was the principal cause of his purchase, his sale of the negro, after owning him only twenty-four hours, is in corroboration of the same moving cause, and seems to preclude the knowledge of the unsoundness of the negro from want of time, if the fact was that the unsoundness then existed. The price he got from the complainant being the same he gave, shows the same thing. The bill of sale, indorsed to the complainant, advised him that the defendant of his own knowledge could but know but little about the negro.
The complainant seems to have had nearly as good an opportunity of knowing the soundness of the negro as the defendant, and if he had thought proper not to rely on his own judgment in this respect, and doubted the soundness, he might have taken an express warranty. His not having done so is his own default, and the law will not in such case under such circumstances, raise an implied warranty to aid his neglect.
Before the case in Douglass, it was a current opinion that a sound price given for a horse was *Page 228 
tantamount to a warranty of soundness. But when that opinion came to be examined it was found too loose and unsatisfactory a ground of decision. Lord Mansfield rejected it; and said there must either be an express warranty of soundness, or fraud in the seller, to maintain the action. 2 East, 314.
So much for the English decisions. And when we come to look into the American cases on the subject, we find the same doctrine laid down. 1 vol. Am. L. Digest, 388, c. 1; a case is cited from 2 Caines, 48, to the following purport. In an action on the case for selling one article for another, there must be either a warranty or a fraud. A sound price does not imply a warranty of soundness in the article, nor is the description in the bill of parcels a warranty. Another case from 1 John's. 274, states that every sale of personal property implies a warranty in respect of the title of the vendor; otherwise, as to the quality or soundness of the thing sold. Again, 4 Johnson, 421. A. sold to B. paints for good Spanish brown and white lead and for a full price; the paints proved bad and of no value. Held, that there was no warranty in the case, and, to make A. liable, there must be either express warranty or fraud. Upon the whole, after a review of all the cases upon this subject at present in our power, it appears to us fully that the law in such a case as the present, and under the circumstances disclosed, gives no right to the complainant, and of course equity can not apply a remedy.
Decree the plaintiff's bill to be dismissed with costs.