## HENRY B. STONE *vs.* EDWARD DENNY.

Though a representation made by a vendor, respecting goods sold by him, be not true in fact, yet if he believe it to be true, it is not a ground of action by the vendee against him for fraud in the sale. *Aliter,* if he make an untrue representation, as of his own knowledge, not knowing whether it is true or false.

In the trial of an action against a practical manufacturer for a fraudulent representation by him, on the sale of the stock of a woollen factory, that a certain schedule of said stock was as correct as could be made while the factory was in operation, the question whether the schedule in the case could have been made by accident or mistake, and not by design, is to be decided on the general evidence in the cause, and the opinion of practical manufacturers is not admissible in evidence, unless some special ground is laid for introducing such opinion.

THIS was an action of trespass upon the case for a deceit, charging that on a sale to the plaintiff of one undivided half of the stock and property of a woollen factory, which the plaintiff and defendant had owned and carried on in common, a schedule then exhibited by the defendant was false, but was represented by him to be true and correct ; whereupon the plaintiff purchased of the defendant the said undivided half, by a bill of sale with such schedule annexed, without warranty as to the quantity or value of the articles.

The case was tried before the chief justice, and a verdict was returned for the defendant. The plaintiff moved for a new trial : " *First,* because the plaintiff, having first offered proof that an account of the stock of a woollen mill in operation can, from the nature of the business, be taken by persons only who are practically skilled in said business, did offer to prove by witnesses so skilled, that certain material and important parts of the account of stock, for an alleged fraud.of the defendant in making which this action is brought, could not have been so made and set down by mistake. by any person so skilled as aforesaid. But the judge ruled that said evidence was inadmissible, and excluded the same. *Secondly,* because the judge refused to instruct the jury, that if, at the time of the purchase by the plaintiff, the defendant, with intent to induce the plaintiff to make the purchase, and not knowing the fact to be true, but believing the same so to be, affirmed that the inventory, taken on the 13th of February 1836, was correct, or as correct as

could be taken, and the plaintiff was thereby induced to make the purchase, the defendant is responsible, if the representation was not in fact true.''

The chief justice stated, in his report of the case, that a great mass of evidence was offered at the trial, going into much detail ; but that the state of the cause, in general terms, and as applicable to the exceptions taken by the plaintiff, was as follows :  '' That the plaintiff was a resident in Boston, president of the Suffolk Bank ; that the defendant was a practical woollen manufacturer ; and that the parties owned and carried on a woollen factory in Oxford, of which the defendant had the superintendence : That in October 1835, the annual account of stock was taken ; that in the autumn of that year, or the beginning of winter, a communication took place between the parties, with a view to bring the business to a close, either by selling the whole to third persons, or by one making a purchase of the right and interest of the other.

'' With a view to such a negotiation, an inventory or schedule of the stock and property was taken on the 13th of February 1836, whilst the mill was in operation.   A person by the name of Brigham, who was employed in a woollen factory of Joshua Clapp, at Leicester, by permission of said Clapp, a common friend and relative of the parties, at the plaintiff's request, and with the defendant's consent, was employed in behalf of the plaintiff to attend at the taking of the inventory, and to assist in the making of it.

'' 1. In reference to the first exception, it appeared by the schedule, that a certain number of pounds of colored wool was put down at the prices which such wool would be worth, increased by the labor and materials applied to it in that stage of partial manufacture.   It was contended, on the part of the plaintiff, that the number of pounds of colored wool was taken from the quantity appearing on the wool-sorter's books, as the raw wool delivered by the wool-sorter to the dyer, and called indiscriminately ' raw wool,' or ' wool in the grease ' ; whereas, by the scouring and coloring, the wool is diminished in weight, and allowance ought to have been made in the weight for such

diminution or shrinkage.   Much evidence was given upon both sides, upon the question whether the weight of the raw wool, or wool in the grease, was so taken, without allowance or compensation, and whether the schedule was in this respect erroneous or not.

" William W. Stone, a witness for the plaintiff, testified that he was present at the house of his brother the plaintiff, when the contract of sale between the parties was made, and that the schedule was there exhibited, and various remarks made respecting it.  This witness was then asked whether, if the colored wool were put down as wool in the grease, it could have been done by accident or mistake, by practical manufacturers and persons of competent skill and experience to take such an account.   This was objected to as matter of opinion in regard to a conclusion of fact upon evidence, and as such incompetent.   The question as understood was, whether if an item, or series of items, were put down as colored wool, and stated at the weights of raw wool, and carried out at the prices of partially manufactured wool, it could, in the opinion of the witness, be matter of accident, or must have been so done by design.   It was rejected as incompetent, on the ground that this conclusion was so much a conclusion of fact from all the evidence and circumstances of the case, that it was not the proper case for the admission of testimony to opinion, and because no sufficient ground was laid for such evidence.

" If this offer of the testimony of opinion had been received, and not rejected as incompetent, it was understood that the plaintiff would have offered the testimony of other practical manufacturers and experts, to the same effect.

" 2.  The plaintiff moved the court to instruct the jury, ' that if, at the time of the purchase, the defendant, with intent to induce the plaintiff to make the purchase, and not knowing the fact to be true, but believing the same so to be, affirmed that the inventory taken on the 13th of February was correct, or as correct as could be taken, and the plaintiff was thereby induced to make the purchase, the defendant was responsible, if the representation was not in fact true.'  He also requested a similar

instruction, omitting the words, 'but believing the same so to be.' These instructions were not given in terms, but in reference thereto the jury were instructed as follows : That if the representation made by the defendant to the plaintiff was, that the schedule was as correct as, from the nature of the case, such a schedule could be made, under the circumstances ; that it was while the mill was in operation, and he believed it to be correct, though in fact he did not know it to be so, it was not a fraudulen representation, for which the defendant was responsible. Bu if he affirmed it to be correct, without qualification, or as of his own knowledge, not knowing whether it was correct or not, with a view to induce the plaintiff to make the purchase, or to make it at the price he did, and the inventory was not in fact correct, it was a fraud which would render the defendant liable. Such a declaration would be a declaration that he knows what in fact he does not know, and therefore is false ; he profits by it, and it enures to his benefit ; and therefore a fraudulent intent may be inferred ; and if the plaintiff relies and acts upon it, and receives damage by it, it is a deceit, for which this action will lie. But in such case, the affirmation must be unqualified, as of his own knowledge, and not so qualified as to render it an expression of belief or opinion.

" If, in the opinion of the whole court, any of these directions were wrong, and a new trial ought to be granted, the verdict is to set aside, and a new trial granted."

*Bartlett,* for the plaintiff.

*C. G. Loring & Gardiner,* for the defendant.

DEWEY, J.* It is important to the proper consideration of the questions raised in the present case to keep in mind the form of the declaration, and the precise ground upon which the plaintiff puts his case. It is an action of trespass upon the case for deceit, and the plaintiff proceeds entirely upon the ground of false representation, and not upon any warranty as to the quantity or value of the articles sold. This, of course, excludes any question whether the affirmation made by the defendant might be

---

* *Hubbard,* J. did not sit in this case.

reasonably construed to have been understood by the parties as a warranty, and to have effect as such, and presents the question of a false representation simply, and the inquiry whether, if the plaintiff was induced by such false representation to make the purchase, the defendant is responsible, if the representation was not in fact true, although the defendant did not unqualifiedly affirm the representation to be true as of his own knowledge.

I had supposed the principles applicable to cases like the present to have been settled by a long course of decisions, and that an action on the case, for deceit by means of a false representation in a bargain for the sale of goods or merchandize, could only be maintained when the false representation had been intentional on the part of the vendor, he either knowing it to be false, or, what would be equally fraudulent in law, knowing that he was affirming as to the existence of a fact, about which he was in entire ignorance.

When a person warrants an article, he makes himself liable for any defect in the matter to which the warranty applies, whether he knew it or not ; but when he makes a bare representation, it is necessary to aver and prove that he knew the representation to be false ; otherwise, he is not liable in damages. This is, I think, the language of the old and the modern cases, to some of which I will refer : *Chandelor* v. *Lopus*, Cro. Jac. 4. *Parkinson* v. *Lee*, 2 East, 314. *Holden* v. *Dakin*, 4 Johns. 421. *Seixas* v. *Woods*, 2 Caines, 48. *Swett* v. *Colgate*, 20 Johns. 202. *Benton* v. *Pratt*, 2 Wend. 385. *Case* v. *Boughton*, 11 Wend. 108 : And in our own reports, the cases of *Emerson* v. *Brigham*, 10 Mass. 197, and *Salem India Rubber Co.* v. *Adams*, 23 Pick. 256.

No doubt the courts have, in their later decisions, manifested a strong disposition to construe liberally, in favor of the vendee, the language used by the vendor in making any affirmation as to his goods, and have been disposed to treat such affirmations as warranties, whenever the language would reasonably authorize the inference that the vendee so understood it. *Chapman* v *Murch*, 19 Johns. 290. *Osgood* v. *Lewis*, 2 Har. & Gill, 495 The case of the bezar stone, in Cro. Jac. 4, has been doubt

ed, for this reason ; and it was suggested by Chief Justice Par-
ker, in *Bradford* v. *Manly*, 13 Mass. 143, that it would not
be received as law in this Commonwealth.   So also Chancellor
Kent, in his Commentaries, Vol. II. p. 479, (4th ed.) ques-
tions the soundness of the decision in *Seixas* v. *Woods*, 2 Caines,
48, that there was no warranty in that case.   But no suggestion
is made by either of these learned jurists, that the principles of
law applicable to cases of mere false representation, without a
warranty, had been erroneously stated in those cases.   On the
contrary, Chancellor Kent re-affirms the correctness of the gen-
eral principles stated in *Seixas* v. *Woods.*

With the application of the prevailing liberal views of the
courts, in construing the affirmation of the vendor to be a
warranty in all cases where the language will bear that con-
struction, it would seem, that, without further extension of the
liability of the vendor, all cases, where liability should reason-
ably attach to the party making such representations, are suffi-
ciently provided for.

As further evidence of the law in this Commonwealth, on this
point, I would also refer to the case of *Hazard* v. *Irwin*, 18
Pick. 95, where notwithstanding the court held the doctrine,
that if one makes a representation, as of his own knowledge, of
the existence of certain facts, which representation is false,
although the person making it does not know whether it be true
or false, it would have all the elements, and draw with it all the
consequences, of a fraudulent representation ; yet this was not
extended beyond representations made by the party alleging that
he knew them to be true, of his own knowledge ; and in regard
to representations generally, the instructions to the jury were,
that they must be shown to be false, and that the party making
them knew them to be false.   The doctrine of that case seems
to have been distinctly in the mind of the chief justice, and was
presented as a part of his instructions in the present case, so far
as it was applicable.

The case of *Page* v. *Bent*, 2 Met. 371, when carefully ex
amined, will not be found to sanction any different principles,
That was a case where the defendant relied, in his defence,

upon a release from the plaintiff; and the plaintiff sought to avoid its effect, by showing that it was obtained by false and fraudulent representations. The instructions to the jury were, that if an intentional misrepresentation, as to the state of his affairs, had been made by the defendant, and the release thereby procured, it would be void ; but if such false representation was not made designedly, it would not have that effect ; and this instruction was held to be correct.

But if the doctrine, now insisted on by the plaintiff, be the correct one, the instructions should have been, that if the party, with the intent to procure the release, had affirmed a certain state of facts, not knowing the same to be true — however unintentional the error, and whatever might have been the circumstances authorizing a belief of the truth of his statements — and the plaintiff had thereby been induced to execute the release, the same would be avoided if the representation was not in fact true.

There were many circumstances in that case bearing upon the question of an intentional misrepresentation, and which were offered as explanatory of the representation and as accounting for the alleged errors and false statements ; and the party had the benefit of them before the jury. The court say, " the question is, whether in fact there was a fraudulent intent and purpose to deceive." So also in the case at bar, there were circumstances, relied upon by the defendant, arising from the manner in which the schedule was made ; it being taken while the mill was in operation, and being taken partly through the agency of a third person, who assisted in making the same, at the request of the plaintiff; all which facts were proper for the consideration of the jury, in deciding upon the character of the representations made by the defendant, if they were found not to be true. It was to be ascertained, from all the facts and circumstances, connected with the representation and explanatory thereof, what was the real character and effect to be given to the affirmation by the defendant that the schedule was correct, or as correct as could be taken ; and whether the representation was to be treated as a statement of a fact for the entire correctness of which the defendant was understood by the vendee

to assert his personal knowledge, or merely that it was an assertion of his belief, upon reasonable grounds for such belief, that the schedule was fairly taken, and truly represented the quantity and quality of the articles therein described.

But it seems to be supposed by the counsel for the plaintiff, that the instructions asked by him were well warranted by the decision of this court in *Lobdell* v. *Baker*, 1 Met. 193, as well as by several English cases which were previously decided, and which are referred to in support of some of the positions stated in that case. From an examination of those cases, and others bearing upon this question, I apprehend, however, that it will be found that no real change has been sanctioned in the great and leading principles of law applicable to cases of deceit, and that now, as formerly, to charge a party in damages for a false representation not amounting to a warranty, it must appear that it was made with a fraudulent intent, or was a wilful falsehood ; as in the case of one asserting as of his own knowledge a matter of which he has no knowledge, nor any sufficient ground for making the assertion. Among the reported cases, as was suggested by Sewall, J. in the case of *Emerson* v. *Brigham*, already referred to, some may be found, where from the very circumstances of the case a false representation may and ought to be presumed to have been wilfully false and fraudulently made ; and hence, whenever such cases occur, upon showing the representation to have been made by the defendant, and that it was false, you have all the elements of a fraudulent representation, and the jury, if they believe the testimony, are bound to charge the party in damages for making such representation.

Another class of cases, where in an action on the case the party may be charged, without imputing moral turpitude, may be found under a state of facts like those in *Adams* v. *Paige*, 7 Pick. 542, where the party has done an unlawful act to the prejudice of a third person, and one which the law deems fraudulent.

In looking at the English cases, I think it will be found that where they have been of the class familiarly known as actions of deceit upon false representations, they have been cases where

the representation was known to be false by the party making it, and therefore clearly intentionally false, and fraudulent.* Thus in the case of *Foster* v. *Charles*, 6 Bing. 396, and 7 Bing. 105, it was held that it was a fraud in law, if a party makes a representation which he *knows* to be false, and an injury ensues to another ; and that the person making such representation is responsible for the damages occasioned thereby.

*Corbett* v. *Brown*, 8 Bing. 33, goes no further than this, viz. where a representation is false, within the defendant's own knowledge, fraud on his part must be inferred.

In *Polhill* v. *Walter*, 3 Barn. & Adolph. 114, which was an action on the case for a false representation by the defendant that he was authorized to accept a bill drawn upon another person, the case turned entirely upon the question whether the defendant, when he wrote the acceptance and thereby represented that he had authority from the drawee to make it, knew that in fact he had no such authority. If he had such knowledge, he was chargeable in the action, although he had no fraudulent purpose, and might have acted under the expectation that the drawee would adopt his acceptance ; his liability arising from the fact that he had acted as one authorized when he knew he had no authority from the drawee.

In *Freeman* v. *Baker*, 5 Barn. & Adolph. 797, one count was in case for deceit in an alleged false representation in a bargain for the sale of a ship ; the defendant having represented to the plaintiff that the ship was a copper fastened ship. The jury found specially, that the vessel was not copper fastened, but they further found that there was no evidence that the defendant knew the representation to be false, and that there was no concealment on his part. Parke, J. in the opinion given by him, says, " the question of deceit was disposed of by the jury, when they found that the defect in the ship was unknown to the defendant." He adds, " *Polhill* v. *Walter* only decides that if a person states what he knows to be untrue, and induces another to act upon it to his prejudice, a fraud in law is committed. That case

---

* See *Moens* v. *Heyworth*, 10 Mees. & Welsb. 158

was decided on the authority of *Foster* v. *Charles*, and in both cases, the party making the representation knew it to be false."

The case of *Adamson* v. *Jarvis*, 4 Bing. 66, and 12 Moore, 241, is probably much more relied upon as sustaining the position taken by the plaintiff in the case at bar. That was, as it seems to me, a case of a character distinct from that before us. It was not a case of a representation made by a vendor to a vendee of the quality or character of articles offered for sale, but arose upon an employment of the plaintiff by the defendant to sell goods for him, thus representing himself as having the right to dispose of the goods, which service the plaintiff duly performed and paid over the avails to the defendant, and afterward the true owner of the goods recovered the value thereof of the plaintiff, who thereupon brought his action on the case for the damages he had sustained thereby. The action was maintained, and clearly might well be maintained, upon the ground prominently put forth by Best, C. J. that "every man who employs another to do an act, which the employer appears to have a right to authorize him to do, undertakes to indemnify him for all such acts as would be lawful if the employer had the authority he pretends to have." It was a case of principal and agent, and the only question would seem to be, how far the employment of an agent to sell, authorizes such agent to recur to his employer for indemnity for damages for acts done by virtue of such employment. A further proposition was also stated by the learned judge in the same opinion, to this effect ; that "he who affirms either what he does not know to be true, or knows to be false, to another's prejudice and his own gain, must answer in damages " : And it is this, which the plaintiff's counsel supposes bears upon the present case.

*Humphrys* v. *Pratt*, 2 Dow & Clark, 288, also cited by the plaintiff's counsel, was of a very similar character, being an action on the case by a sheriff against a judgment creditor for damages sustained by reason of selling goods upon the request and affirmation of the defendant that they were the property of the judgment debtor, when they were in truth the property of a third person, who afterwards recovered the value thereof from the plaintiff.

The case of *Lobdell* v. *Baker*, 1 Met. 193, is also distinguishable from the present, in its general features and circumstances. That case was treated throughout as one where the original act complained of was an unlawful and fraudulent act. The great question was, whether there must be shown to have been a fraudulent purpose in the mind of the defendant when he sent the note, with a previous fraudulent indorsement written thereon, to market for sale, and when it was purchased by the plaintiff. The liability of the defendant in that case arose from his having procured the indorsement of one Swan, with the fraudulent intention of putting the note in circulation and giving it a false credit. Having done that unlawful act, he made himself liable in damages, if he permitted it to go into circulation without erasing therefrom the name of Swan. The case is not like the one before us, and in itself presented an unlawful and fraudulent act as the foundation for charging the defendant. It is true, that in the opinion given in that case, the legal propositions stated in *Adamson* v. *Jarvis* were substantially affirmed. It was stated that a person might render himself liable, in an action for damages, to a party prejudiced by a false affirmation, though not made with any fraudulent intention ; and the case already cited, of *Polhill* v. *Walter*, seems to support such a position. But it is to be remembered, that in that case the defendant *knew* he was doing an unauthorized and unlawful act, although he did not anticipate that any injury would result therefrom to the plaintiff. He knew he was making a false representation, and therefore made himself chargeable. The other proposition, that "when a party affirms either that which he knows to be false, or does not know to be true, to another's prejudice and to his own gain, he must answer in damages" for the injury occasioned by such falsehood, was stated in general terms and referred to as a familiar principle of law. It was not suggested as any modification of the law so often stated in the reported cases, that to maintain an action of deceit for a false representation not amounting to a warranty, it is necessary to show that it was fraudulently made, or that it was effected by an unlawful act. Such fraud will be inferred, when the party makes a representation which he knows

14\*

to be false, or as to which he has no knowledge or information, and no grounds for expressing his belief ; and in such cases the party would be held liable for his false representation. So also if he positively affirms a fact, as of his own knowledge, and his affirmation is false, his representation is deemed fraudulent.

We are then brought to the inquiry, did the instructions, given to the jury by the chief justice, present the case properly to them, in matter of law ?

After a full consideration of the legal principles bearing upon the subject, and of the reported cases, the court are of opinion that the instructions were sufficiently favorable to the plaintiff. Two propositions were stated by the chief justice, which are to be taken together, and which seem to present the whole law which the case required to be stated : 1. That a qualified representation, affirming that the schedule was as correct as from the nature of the case such a schedule could be, it being made while the mill was in operation, and the representation at the time it was made being believed to be correct by the party making it, though not known to be so, and now shown to be incorrect, was not a fraudulent representation for which the de fendant was responsible : 2. That an unqualified affirmation, or as of his own knowledge, of the correctness of the schedule, made by the defendant, he not knowing whether it was correct, with a view to induce the plaintiff to make the purchase, if it proved false, was a fraud which would render the defendant liable The first of these propositions properly presented the ques tion to the jury, as to the nature of the representation, and gave the defendant the benefit of a qualified affirmation, if such should appear to be its true character, and gave the proper effect to the fact of his belief of the correctness of the schedule, if he could show that he entertained such belief ; while the second proposition held the defendant to the strictest responsil ility for the truth of an unqualified representation, or one made as of his own knowledge ; holding such a representation, if false, to be a fraud entitling the plaintiff to recover.

These propositions were, as we think, properly substituted, to the exclusion of the instructions asked for by the plaintiff.

Some objections were suggested to the subsequent remarks from the judge, accompanying the statement of the two propositions above alluded to. It was said that the explanatory remarks seem to assume that the party making a false representation should have an interest in the matter, or profit by it, to render him chargeable for such representation ; which woɪk be at variance with the law on the subject.

We all understand the law to be, that it is not necessary that any such interest should exist, in order to charge the party. Nor was the contrary doctrine supposed by us to be inferable from the remarks made. But however that might be, no objection can be taken to the suggestion and application of the principle to the case then before the jury, as it was strictly illustrative of a fact in the case, and one not controverted ; it being unquestioned by the parties, that the defendant had a direct interest in the matter.

It was more strongly objected, that the tendency of these explanatory remarks, accompanying the instruction, was to mislead the jury as to the rule of law, if they were satisfied the defendant made an unqualified affirmation, or as of his own knowledge, that the schedule was correct, when he had no knowledge whether it was correct or not, and the schedule was not in fact correct — that the language of the court was, that in such case " a fraudulent intent may be inferred," whereas upon proof of the facts stated in the proposition, the jury should have been instructed, that a fraudulent intent *must* be inferred.

It seems hardly possible that the jury should have been misled by the language here used : *First*, because the general proposition, as stated by the judge, declared explicitly that if the representation was of the character there described, it was a fraud which would render the defendant liable : And *secondly*, because in the concluding explanatory remarks, after stating that in such cases a fraudulent intent may be inferred, it was added " and if the plaintiff relies and acts upon it, and receives damage by it, it is a deceit for which this action *will* lie." Taking the whole ˙nstructions together, they are satisfactory to us, and furnish no sufficient ground for sending this case to another jury.

A question was raised at the trial, respecting the competency of the testimony of practical manufacturers, as to their opinions whether the errors, complained of in the schedule, could have resulted from accident, or must have proceeded from design.

It is somewhat difficult to mark with precision the extent to which testimony of opinion of persons of skill, or experts, is admissible. It seems to us, however, that the question before the jury, in the present case, was not of the character which would render such testimony admissible, and that it was therefore properly rejected ; and upon the ground stated by the presiding judge ; viz. that the question whether the schedule was incorrectly made from accident or design was a conclusion of fact to be drawn from all the evidence in the case, and one which ought not, under the circumstances in which the case presented itself, to be submitted to persons of art or skill to draw conclusions for the jury.

*Judgment on the verdict.*