(50 App. Div. 399.)

## IVES v. ELLIS et al.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

SALES—WARRANTY—CAVEAT EMPTOR—EVIDENCE—SUFFICIENCY.

Plaintiff purchased a book which one of the defendants, who was an expert on the subject, represented to be an ancient copy, of great value. Plaintiff, who owned a number of valuable ancient books, examined it carefully at the time of the purchase, and a few years later, in advertising his library for sale, pointed out the superior marks of genuineness which this copy possessed over other copies extant. Defendant denied any warranty, but testified that he had told plaintiff that experts differed as to the genuineness of the book, but that in his opinion it was genuine. The testimony of experts as to the merits of the copy was conflicting. There was no claim that the defendant made any fraudulent representations, but plaintiff sued for damages for breach of warranty. *Held*, that the evidence justified a verdict for the defendant, since the jury might have found either that there was no warranty, or that the copy was genuine.

Appeal from trial term, New York county.

Action by Brayton Ives against Gilbert I. Ellis and another. From a judgment in favor of defendants, and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Charles E. Hughes (Arthur C. Rounds, on the brief), for appellant. Austen G. Fox, for respondents.

GOODRICH, P. J. Upon his return to Spain from his first voyage across the Atlantic, Columbus wrote to his patron and friend, Luis de Sant Angel, a letter describing the voyage and what he saw. This letter seems to have been printed at once for distribution, according to the methods used at that time. Few copies are extant, and they are of great value. The plaintiff alleged in the complaint that in March, 1890, the defendants sold him a book purporting to be one of such copies, and "represented and expressly warranted to plaintiff that the said book or document was a printed copy typographically produced from movable types, and not mechanically reproduced by photography, lithography, engraving, or other reproductive process, and that, relying upon such representation and warranty, and believing the same to be true, plaintiff purchased said book or document, and paid to defendants therefor the agreed price of £900 sterling." He alleged that the representations and warranty were not true in fact; that the book was not a printed copy produced typographically by means of movable types, but that it was made by some reproductive process, and that such fact was not obvious or patent, and was not known to the plaintiff at the time of the purchase; and that the book was worth $2.55. Judgment was demanded for the difference between the price paid and the sum of $2.55. The defendants admitted the sale at the price named, but denied any representation or warranty, or reliance of the plaintiff thereon. They alleged that the sale was made in good faith; that no material fact within their knowledge or information was withheld; that no statement or representation was made which was not absolutely true,

to the best of their knowledge, information, and belief; that the plaintiff examined and inspected the book, and relied thereon and upon his own knowledge; that the defendants had no knowledge or information that the book was a counterfeit or was not produced by typography; that it was not a counterfeit; that its value was not less than the price paid; and that the value of the book had been lessened by the acts of the plaintiff, discrediting its genuineness. The issues thus framed came on for trial, and the jury found a verdict for the defendants. From the judgment entered thereon, and an order denying his motion for a new trial, the plaintiff appeals.

The plaintiff made no request to direct a judgment in his favor, and took no exception to any part of the charge. He thus conceded that there was a question of fact to be submitted to the jury; and this appeal brings up only exceptions relating to the evidence, and the question whether the verdict was against the evidence or the weight of evidence.

First, as to the contract: The plaintiff and the defendant Ellis are the only witnesses as to the conversation eventuating in the purchase of the book. The plaintiff testified in accordance with the allegations of the complaint, as to the representations and warranty; and the defendant Ellis, according to the allegations of the answer,—denying any representation or warranty, although he admitted stating as his opinion that the book was genuine. It is also to be observed that the plaintiff does not testify to an express warranty, but merely states that Ellis said that the book was printed in Spanish, and called the witness' attention to the preface of an advertising edition of the book published by the defendants, "which he repeated and confirmed" [the preface used the words "the type is essentially Spanish in its character"]; that he said "that this was a genuine piece of ancient typography, and he had no hesitation in making the statement, because he had examined it himself, and because he had received the opinions of several English experts, some of whose names he gave me. Among those experts was the name of his uncle, Mr. F. S. Ellis, formerly the senior of the firm, with whom I had had dealings for twelve or fourteen years, * * * for whose opinion as an expert in books I had very great respect"; and that Ellis told him that both Mr. Blades and F. S. Ellis had expressed the opinion that the book was what it purported to be. The defendant Ellis admitted that he expressed his opinion that the letter was a genuine specimen of ancient Spanish typography, citing the opinions of experts who had seen it, in support of his opinion, but denied making any representation to the plaintiff that it was genuine. The plaintiff also testified that he and Ellis together "examined the book in dispute, looking at the binding, the paper, text." Ellis testified that before the sale was completed he told the plaintiff that his own opinion as to the genuineness of the book was not shared by some other people,—principally by Mr. Quaritch and Mr. Harisse, of London, who held the opinion that it was not genuine,—but that he did not believe Quaritch had ever seen it, and that Harisse had never seen it. The plaintiff, who was recalled to the stand, did not dispute this statement. Ellis testified, also,

that the plaintiff, after Quaritch and Harisse were mentioned, said, "Well, I can believe my own eyes." This the plaintiff, when recalled, contradicted. In addition to this, the plaintiff conceded that he and Ellis together examined the book; that he owned about 50 specimens of ancient typography,—among them, the Guttenburg Bible; and that he told Ellis that he was not familiar with Spanish typography. The testimony on the subject of the sale was therefore equally balanced. I have searched the record carefully to find any corroboration of the plaintiff's evidence on this question, and fail to find any which compelled a verdict for the plaintiff. The language of Gibson, C. J., in McFarland v. Newman, 9 Watts, 55, seems peculiarly applicable to such a situation as that described in the plaintiff's testimony (page 57):

"If the buyer, instead of exacting an explicit warranty, chooses to rely on the bare opinion of one who knows no more about the matter than he does himself, he has himself to blame for it. If he will buy on the seller's responsibility, let him evince it by demanding the proper security; else, let him be taken to have bought on his own. He who is so simple as to contract without a specification of the terms is not a fit subject of judicial guardianship."

It is settled doctrine that, where there is neither express warranty nor fraudulent representation as to the quality or goodness of an article sold, the vendor is not bound to answer, except under special circumstances, and that the rule of caveat emptor applies. 2 Kent, Comm. 478, note; Sexias v. Woods, 2 Caines, 48. In the Sexias Case, which related to wood sold and purchased "as brazilletto wood," Thompson, J., reviewed the authorities, and said (page 52):

"From an examination of the decisions in courts of common law, I can find no case where an action has been sustained under similar circumstances. An express warranty, or some fraud in the sale, is deemed indispensably necessary to be shown. In the case of Chandelor v. Lopus, Cro. Jac. 4, in the exchequer chamber, it was decided that an action of trespass on the case would not lie for selling a jewel, affirming it to be a bezoar stone, when in truth it was not, unless it be alleged that the defendant knew it was not a bezoar, or warranted it to be such. And in the case of Springwell v. Allen, 2 East, 448, in note, it was adjudged that the scienter or fraud was the gist of the action, when there was no warranty."

Accord, Welsh v. Carter, 1 Wend. 185.

Mr. Benjamin, in his treatise on Sales (section 613), reviews the authorities, and quotes from Pasley v. Freeman, 3 Term R. 51, where Buller, J., speaking of Crosse v. Gardner, Carth. 90, and Medina v. Stoughton, 1 Ld. Raym. 593, said (page 57):

"It was rightly held by Holt, C. J., and has been uniformly adopted ever since, that an affirmation at the time of a sale is a warranty, provided it appear in evidence to have been so intended."

Benjamin adds that:

"A decisive test is whether the vendor assumes to assert a fact of which the buyer is ignorant, or merely states an opinion or judgment upon a matter of which the vendor has no special knowledge, and on which the buyer may be expected also to have an opinion, and to exercise his judgment. In the former case there is a warranty; in the latter, not."

This intention is a question of fact for the jury. Benj. Sales, § 610.

But there is another consideration which affects the question, and this is made clear by the two cases of Jendwine v. Slade, 2 Esp. 572, and Power v. Barham, 4 Adol. & E. 473. In the first, two paintings were sold at auction by a catalogue in which one was described as a sea piece by Claud Lorraine, and the other a fair by Teniers. Lord Kenyon held that this was not a warranty that the paintings were genuine works of Lorraine and Teniers, but only an expression of opinion by the vendors; and in the second case, where in the bill of parcels the vendor said, "Four pictures, views in Venice, Canaletti," it was left to the jury to determine whether the vendor meant to warrant that the pictures were the genuine works of Canaletti. Lord Denham, C. J., distinguished the case from the Jendwine Case by the suggestion that Canaletti was a comparatively modern painter, of whose works it would be possible to make proof as a matter of fact, but that this would not be possible in the case of very old painters, and that therefore the assertion was necessarily a matter of opinion. Applying this doctrine to the case at bar, it is very clear that the plaintiff is seeking to recover upon an allegation that, although the defendants did not in terms make an express warranty, they made a positive affirmation of the fact that the book was a typographically printed work of the fifteenth century. Passing the fact that there is neither claim nor suggestion that the defendants made any fraudulent assertion, the plaintiff seeks to enforce what may be termed a "warranty of an opinion." It is not possible, in the nature of things, to prove absolutely that the work is a typographical work printed four centuries ago. The most that can be proved, and that only inferentially and by the opinion of experts, is that it is not a typographical print at all. But this is merely the opinion of experts against experts, and the plaintiff must fail because he has offered no evidence to show, and has not shown, that the defendant Ellis really did not hold the opinion that the work was what the plaintiff says he represented it to be, even assuming that the plaintiff's evidence as to representation is to be credited against the contradiction of the defendant Ellis. The court, under the authorities, would have been justified in dismissing the complaint, or directing a verdict for the defendants. It is evident that on the question of representation or warranty the plaintiff had no just complaint of the submission of the case to the jury, and, as their verdict possibly may have been rendered solely on the ground that the defendants made no representation or warranty, this is conclusive against the plaintiff's right of action.

It is well, however, to refer to the other question sharply contested at the trial. The plaintiff produced several competent and well-known experts, whose testimony would have justified a finding by the jury that the book was not typographically printed, and this they gave as their opinion. On the other hand, the defendant Ellis (himself an expert) and another expert testified to facts that would have sustained a verdict that the book was typographically produced, and that in their opinion it was. Here, again, was a conflict of evidence. The plaintiff's experts pointed out certain features which they claimed could not appear in a page produced from mov-

able types,—such, for instance, as the encroachment or projection of the tail of a letter like "p" below the line, and into the space occupied by a letter like "b," whose upper part met and passed the tail of the "p." This, it was claimed, could not possibly occur where movable types like the present form of types were used, or where leads were used to space off between the lines of types. But I find no evidence as to the form of the types of the fifteenth century, or to show that leads were then used. It is unnecessary to refer to other features, such as register of lines and pages, or letters overhanging adjacent letters, in respect to which it may be said again that the record furnishes no evidence as to the method of typography in those early days of printing. The indications thus pointed out by the plaintiff and his witnesses are obvious and patent to any person of ordinary observation, and having reasonable familiarity with matters of this sort, and can be seen by any one when pointed out, even on a casual examination. A vendee may not close his eyes, and rely upon the statement of an opinion of the vendor as to obvious defects, where there is no express warranty.

It further appeared that the plaintiff made no complaint to the defendants as to the character of the book till 1895. Meanwhile, in March, 1891, he prepared a catalogue for an auction sale of his library, in which he described the book, and referred to the typographical differences between his copy and the one in the Ambrosian Library, at Milan; expressing his belief that the latter was copied from his own, and stating that he had bought his copy in preference to another which had been offered to him, "after a careful investigation of the merits of both, in the belief that it was the earlier edition, more desirable in every respect. Nothing has since come to light to change that belief. The weight of evidence indicates that the work in question is a unique and genuine copy of absolutely the earliest report of Columbus' great discovery." It is evident that, if the jury reached and passed upon this question, they coincided with these views of the plaintiff thus expressed. On the other hand, the defendants' experts pointed out certain features which justified the contention that the book was printed from movable types, such as letters reversed or printed upside down, which, one of the plaintiff's experts testified, was indicative of the use of movable types; letters wrongly inserted, as "l" for "t"; different forms of the same letter, which might have resulted from the use of type from different fonts; and the distinct pressure of the types upon the paper, to which the defendants' experts testified. Here, again, was a conflict of evidence, whether the book was or was not typographically printed, which was a proper one to submit to the jury, so that whether the jury found their verdict for the defendants on the ground that no warranty or representation was made, or that the book was really printed typographically, their verdict is supported by sufficient evidence.

These views render unnecessary any consideration of the exceptions of the plaintiff as to the admission of the letter of F. S. Ellis to the defendants, or the method of the cross-examination of the plaintiff by the defendants' counsel, and the latter's reading of

passages from scientific books.  The judgment is correct, and should be affirmed.

Judgment and order affirmed, with costs.  All concur.

HATCH, J. (concurring).  I vote for the affirmance of this judgment upon the ground that it is conclusively shown by the testimony of the plaintiff that the genuineness of the book, as an ancient typography, rested alone upon the opinion of himself and others. He understood when he made his purchase that the character of the book for genuineness was a subject of dispute, and upon this point his information was quite equal to that possessed by the defendants. The ancient character of the book, the impossibility of establishing with certainty either that it was or was not genuine, and the fact that the plaintiff was informed upon all of these points, conclusively establishes that the defendants could do no more than express the opinion that the book was in character what it purported to be. In the nature of things, they could do no more than express an opinion; and that opinion, however strongly expressed, cannot be dignified as a warranty.  I do not commit myself to the doctrine that it was possible to make the genuineness of the book a subject of warranty.  To constitute a warranty, there must have been the affirmation of a fact; and it is somewhat difficult to see how there can be the affirmation of a fact where, in the nature of the case, the existence of such fact cannot be established, but must rest in the opinion of the person making the assertion, or in the opinion of another. But, assuming that it could be made so subject, it is evident that it would require express words of warranty, so certain in character that no other construction could be attached to them.  Certainly the evidence upon which to found a warranty in this case fails; for from all that appears, and from all the words used, giving them their strongest significance, it is clear that only an opinion was or could be expressed.  The transaction itself admitted of nothing else.  Even now, after all the evidence obtainable by either party has been made manifest, it is mere speculation to say that the book is not genuine. Indeed, it is quite probable that, if the question had been submitted to the jury, they would have found that the book was a genuine typography.  Certainly they would have so found if the parties had united in asking such a finding.  The utter futility of attempting to establish whether the book be genuine or otherwise is a sufficient answer to the claim that a warranty accompanied the sale. This conclusion the authorities cited by the presiding justice abundantly sustain, and many others might be added.